463 So.2d 564 (1985)
Herndon W. JONES, Jr., Appellant,
v.
Beverly A. JONES, Appellee.
No. AS-153.
District Court of Appeal of Florida, First District.
February 18, 1985.
*566 Elliot Zisser of Zisser, Robison, Spohrer, Wilner & Harris, P.A., Jacksonville, for appellant.
Stephen O. Parker, Jacksonville, for appellee.
ERVIN, Chief Judge.
In this appeal from a modification of, and supplement to, a final judgment of dissolution of marriage, appellant-husband raises three issues for our consideration: (1) whether the trial court abused its discretion by refusing to permit adequate discovery of the wife's medical and mental condition as a criterion affecting her fitness for custody of the minor children; (2) whether the trial court erred in failing to specify that upon sale of the former marital residence the husband would be entitled to a credit against the wife's share of the proceeds for one-half of all payments made as periodic alimony of the mortgage, interest, taxes and insurance; and (3) whether the award to the wife of child support, alimony, and attorney fees in excess of husband's ability to pay was an abuse of discretion.
The husband and wife, married since May 6, 1972 and having two minor sons, filed a petition and counter-petition respectively for dissolution of marriage, each seeking custody of the children. Requests by each party for psychological evaluations of the other were denied by the trial court. Attached to the husband's request was an affidavit, alleging that the wife was a habitual user of narcotics and therefore mentally incapable of caring for the children. The wife filed a motion, seeking temporary support, a limitation on the husband's discovery and enforcement of a prior order which had directed telephonic communication with the children. In support of her motion to limit discovery, the wife asked "for a protective order to limit the time within which counsel for the husband may depose her and to limit the number of depositions that such counsel intends to take of other persons." The motion was phrased in that manner because, at the time it was filed, the husband's attorney had not served upon the wife any notices of depositions or of production of documents, as required by Florida Rule of Civil Procedure 1.351. Following the service of the wife's motion, the husband filed notices of production from non-parties, pursuant to rule 1.351. The notices were apparently filed in an attempt to support the husband's prior affidavit, alleging the wife's excessive use of narcotics, because the notices had attached to them the names of thirty-seven physicians, nine hospitals and four outpatient clinics that the husband intended to have subpoenaed for the purpose of producing the wife's medical records. As a result of this sequence of pleadings, the only motion before the court at the hearing which culminated in the order of April 13, 1982, limiting discovery, was the wife's motion.
Although the court generally restricted the scope of discovery, it did permit the husband to review the medical records in the custody of Doctors Gatling and Garcia, and to depose them. The deposition testimony *567 of Dr. Gatling later revealed that he had treated the wife with prescription medications for a "prolapsed microvalve" (sic) of her heart, as well as for headaches and nausea associated with that condition, and for chronic migraine headaches. This treatment continued for seven and one-half years from October of 1974 until March of 1982, and at no time during that period did he have any indication that she had problems with drug use, or that she might be unfit to care for her children due to such use. Dr. Gatling, however, was aware that she had been seeing at least three other physicians for lung and abdominal conditions and headaches.
After the first part of a bifurcated final hearing, the trial court entered final judgment of dissolution of marriage, awarding to the wife temporary custody of the children, temporary child support payments, alimony, and relief from mortgage obligations, as well as the temporary, exclusive use and possession of the marital home. The court reserved ruling on the issues of permanent custody, visitation, child support, alimony, possession of the marital home, attorney's fees and costs.
The unresolved issues were the subject of a second final hearing, at which conflicting evidence was presented by various witnesses  relatives, neighbors, employers, the children's teachers, the parties themselves  as to the quality of care each of the parents had provided to the children. The trial court ultimately entered the appealed modification to the final judgment of dissolution, wherein it granted the wife the primary residential custody of the two children, subject to the husband's right of reasonable visitation, and directed the husband to pay: (1) as periodic alimony, the monthly mortgage payments of $211.89 on the marital home; (2) child support of $140 biweekly for both children until each reaches age 18, marries or becomes self-supporting; (3) rehabilitative alimony of $40 biweekly for two years; and (4) $5,279.70 in attorney fees and costs, payable in $100 monthly installments. The wife was granted exclusive use and possession of the marital home until the children reach age 18, marry or become self-supporting, with the provision that "[a]fter the exclusive use and occupancy has terminated, on sale of the residence, the husband shall be entitled to receive reimbursement of one-half of all payments of principal, interest, taxes and insurance so made by him."
We agree that it was improper, under the circumstances, for the lower court to limit discovery without first conforming with the requirements of rule 1.351. The wife's motion to limit discovery was filed pursuant to the provisions of rule 1.280(c), generally authorizing relief from discovery in "order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense that justice requires, ... ." The record before us, however, does not reveal the wife's prior compliance with the dictates of rule 1.351(b), stating that if a party within ten days of the service of notice upon him or her, objects to production of documents, "the documents or things shall not be produced under this rule." (e.s.) The committee note to rule 1.351 further provides that, in the event of an objection, "recourse must be had to rule 1.310." Rule 1.310 in turn prescribes the procedure to be followed when taking depositions upon oral examination of any person, including the procedure for raising objections during such examinations.
It should be observed that the purpose behind rule 1.351's adoption was to provide an inexpensive means for obtaining production of documents from non-parties in order to permit the affected party the opportunity to inspect or copy them, without the party having to incur the far more substantial expense involved in proceeding by formal depositions under rule 1.310. The committee note to the rule states: "This rule is designed to eliminate the need for taking a deposition of a records custodian when the person seeking discovery wants copies of the records only." Once, however, an objection is raised, the remedy afforded by rule 1.351 automatically terminates, without the necessity of first obtaining, *568 as was done here, an order of the court.
The wife, however, as stated, did not simply object to discovery, but sought also to limit discovery. Her motion and the resulting order were premature in that at the time of the hearing on the wife's motion to limit discovery, it does not appear from the record that the husband had served any notices of depositions pursuant to rule 1.310 on the wife. By its own terms,[1] the wife's motion shows that it was filed in anticipation of planned discovery, and was based on speculation of possible abuse  rather than on demonstrated facts  as required by rule 1.310. Moreover, the motion contains no recitation of facts that would warrant the court's drastic limitations on the husband's right of discovery. Accordingly, since there were no notices of depositions outstanding at the time of the hearing, the wife was then unable to demonstrate any abuse by the husband in seeking discovery.
The result of the court's erroneous order was to shift to the husband the burden of showing good cause for seeking discovery of the wife's medical condition, insofar as such condition related to her alleged drug abuse, thereby affecting her fitness to have custody of the children. The court's failure to comply with rule 1.351's procedure was highlighted by its later reliance upon a study conducted by the Department of Health and Rehabilitative Services, which reported that the wife was not guilty of drug abuse. Such reliance went to the very heart of the matters sought by the husband to be discovered: whether the mother was a fit parent to have primary custody of the children.
In reversing the lower court's order limiting discovery, and in remanding, we emphasize that we are not now precluding the lower court from later exercising its discretion by entering an order granting the wife relief from oppressive discovery, should such facts develop. Our reversal is predicated on the sole ground that the exercise of the court's discretion was premature, because the husband, at the time of the hearing, had not yet availed himself of the recourse provided under rule 1.310. The lower court may yet, upon demonstrated facts, as required by rule 1.310, limit or grant discovery.
The trial court's modification order was also incomplete insofar as it pertained to the sale of the marital residence. The husband was required to make all monthly payments on the mortgage, including taxes and insurance during the period that the wife was entitled to exclusive use and occupancy of the marital residence. As the husband argues, these expenses are proratable to the cotenancy ownership of the marital residence, and the trial court cannot require the husband to build the wife's equity in the property subject to the cotenancy. See Smith v. Smith, 390 So.2d 1223 (Fla. 1st DCA 1980); Rubino v. Rubino, 372 So.2d 539 (Fla. 1st DCA 1979). The trial court's final judgment directed that upon sale of the marital residence, the husband would be entitled to receive reimbursement of one-half of the payment of such expenses made by him, but it did not specify how the proceeds upon sale of the residence were to be divided between the parties. We therefore remand to the lower court in order that the judgment reflect the amount of the proceeds each party shall receive when the marital home is sold.
The husband finally contends that the amount of child support, alimony and attorney's fees awarded to the wife is in excess of his ability to pay and therefore *569 constitutes an abuse of the trial court's discretion. The trial judge on remand of this case as to the first issue may yet decide  if he finds it appropriate to grant the discovery requested, and such discovery convinces him that the husband is the proper parent to obtain custody of the minor children  to order custody of the children to the husband, thus mooting the issue of the excessive amount of child support awarded the mother. The last alternative point, however, relates only to the allegedly excessive amounts directed. As to this issue alone, we find no abuse of discretion.
In awarding alimony, child support and attorney's fees, the trial court must consider the financial ability of the spouse to provide the funds, as well as the needs of the other spouse and the standard of living they shared, and the needs of the children. See Sokol v. Sokol, 441 So.2d 682 (Fla. 2d DCA 1983). The trial court has broad discretion in fashioning such awards. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). We do not find the award to be so excessive in relation to the husband's ability to pay as to constitute a clear abuse of the trial court's discretion and we therefore affirm. Cf. Sokol, Parham v. Parham, 385 So.2d 107 (Fla. 3d DCA 1980); Blum v. Blum, 382 So.2d 52 (Fla. 3d DCA 1980); Nicholson v. Nicholson, 372 So.2d 178 (Fla. 2d DCA 1979).
The judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
ZEHMER, J., concurs.
BOOTH, J., specially concurs.
BOOTH, Judge, specially concurring:
I agree with the majority's interpretation of the pertinent rules and that the trial court's order limiting discovery was premature since the husband had not sent notices of taking depositions under Rule 1.310. The court should not have ruled on the merits of the wife's motion to limit discovery in the absence of the husband's proceeding under Rule 1.310, Florida Rules of Civil Procedure. Only after notices of taking of deposition is the objecting party in a position to file a motion for a protective order.
Since neither party acted properly to bring the matter before the trial court from a procedural point of view, the case must be remanded. This is true even though the record evidence here would support the trial court's ruling on both (1) the limitation of discovery as being excessive and unduly expensive in requiring records and documents from 13 clinics or hospitals and 38 doctors for medical care unrelated to the claim of unfitness, and (2) the award of primary custody of the children to the mother. However, since discovery was prematurely limited without compliance with procedural requirements, I am persuaded remand is required.
NOTES
[1] The grounds stated in the wife's motion for protection stated generally that: (1) she had been told that the husband expected to take discovery, and that she had no money of her own to pay for same; (2) that she had been advised that the husband's counsel intended to depose the wife for several days, and that "the husband intends to depose at least ten medical doctors and probably many other persons", and that "the parties' means and the issues involved do not require such extensive discovery"; and therefore the court was requested either to limit discovery or require the husband to make an advance deposit of $5,000 to cover her attorney's fees and costs of discovery.